**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **NOT FOR PUBLICATION** |
| CELSIUS NETWORK LLC, *et al.*, | Chapter 11 |
| Post-Effective Date Debtors. | Case No. 22-10964 (MG) |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03986 |
| NICKEL DIGITAL ASSET FUND SPC – DIGITAL ASSET ARBITRAGE SPC – INSTITUTIONAL, | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03987 (MG) |
| NASCENT LP, | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03990 (MG) |
| POINT95 GLOBAL (HONG KONG) LIMITED, | |
| Defendant. | |

| | |
|---|---|
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03991 (MG) |
| 168 TRADING LIMITED, | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03993 (MG) |
| ONCHAIN CUSTODIAN PTE. LTD., | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03995 (MG) |
| B2C2 LTD., | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03996 (MG) |
| MATRIX PORT TECHNOLOGIES (HONG KONG) LIMITED, | |
| Defendant. | |

| | |
|---|---|
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03997 (MG) |
| SYMBOLIC CAPITAL PARTNERS LTD, | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03998 (MG) |
| BLOCKCHAIN ACCESS UK LIMITED, | |
| Defendant. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. 24-03999 (MG) |
| TOWER BC LIMITED, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART LITIGATION ADMINISTRATOR'S MOTION TO SEAL

*A P P E A R A N C E S:*

**WHITE & CASE LLP**
*Counsel to Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager, as Representative for the Post-Effective Date Debtors*
1221 Avenue of the Americas
New York, New York 10020
By:     Samuel P. Hershey, Esq.
          Joshua D. Weedman, Esq.

111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
By:    Gregory F. Pesce, Esq.
        Laura Baccash, Esq.

200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
By:    Keith H. Wofford, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are ten motions (collectively, the "Motions") to file under seal

certain exhibits to the complaints filed by the Blockchain Recovery Investment Consortium,

LLC, as Litigation Administrator and Complex Asset Recovery Manager (the "Litigation

Administrator ARM") for Celsius Network LLC *et al.* (the "Debtors," and following the

effective date, the "Post-Effective Date Debtors").  The Litigation Administrator ARM has filed

the Motions in connection with adversary proceedings (the "Adversary Proceedings") that it has

filed against the following entities:

1. **Nickel Digital Asset Fund SPC – Digital Asset Arbitrage SPC – Institutional** ("Nickel," and the motion to seal, the "Nickel Motion," Adv. Pro. 24-03986 ECF Doc. # 2).

2. **Nascent LP** ("Nascent," and the motion to seal, the "Nascent Motion," Adv. Pro. 24-03987 ECF Doc. # 2).

3. **Point95 Global (HK) Limited** ("Point95 Global," and the motion to seal, the "Point Global Motion," Adv. Pro. 24-03990 ECF Doc. # 2).

4. **168 Trading Limited** ("168 Trading," and the motion to seal, the "168 Trading Motion," Adv. Pro. 24-03991 ECF Doc. # 2).

5. **Onchain Custodian Ptd. Ltd.** ("Onchain," and the motion to seal, the "Onchain Motion," Adv. Pro. 24- 03993 ECF Doc. # 2).

6. **B2C2 Ltd.** ("B2C2," and the motion to seal, the "B2C2 Motion," Adv. Pro. 24-03995 ECF Doc. # 2).

7. **Matrix Port Technologies (HK)** Limited ("Matrix," and the motion to seal, the "Matrix Motion," Adv. Pro. 24- 03996 ECF Doc. # 2).

8. **Symbolic Capital Partners Ltd.** ("Symbolic," and the motion to seal, the "Symbolic Motion," Adv. Pro. 24- 03997 ECF Doc. # 2).

9. **Blockchain Access UK Limited** ("Blockchain Access," and the motion to seal, the "Blockchain Access Motion," Adv. Pro. 24-03998 ECF Doc. # 2).

10. **Tower BC Limited** ("Tower," and the motion to seal, the "Tower Motion," Adv. Pro. 24- 03999 ECF Doc. # 2).

No objections or responses were filed. The Court held a hearing on the Motions on July 29, 2024. While the documents contain some sensitive information that the Litigation Administrator ARM seeks to seal, such details are few and far between. In situations such as these, selective redaction, rather than wholesale sealing, is the solution. Accordingly, for the reasons discussed below, the Motions are **GRANTED IN PART**.

## I.    BACKGROUND

### A.  The Debtors' Bankruptcy

On July 13, 2022 (the "Petition Date"), the Debtors filed voluntary chapter 11 petitions in this Court. (*See* ECF Doc. # 1[1]). The Court confirmed the Debtors' plan of reorganization (the "Plan," as amended for the MiningCo Transaction, ECF Doc. # 4289) on November 9, 2023. (*See* "Confirmation Order, ECF Doc. # 3972). The Debtors emerged from bankruptcy on January 31, 2024 (the "Effective Date"). (*See* ECF Doc. # 4298).

#### 1.  The Litigation Administrator

Incorporated into the Plan via a supplement was the *Litigation Administrator and Complex Asset Recovery Manager Agreement* (the "Litigation Administrator ARM Agreement"). (*See* "Eleventh Plan Supplement," ECF Doc. # 4297 Ex. C.) Pursuant to the Plan and the

---

[1]    Unless otherwise noted, docket numbers refer to the main Celsius docket, Case. No. 22-10964.

Litigation Administrator ARM Agreement, the Litigation Administrator ARM may administer certain claims, including the causes of action asserted in the Adversary Proceedings (the "ARM Claims") on behalf of the Post-Effective Date Debtors for the benefit of the Debtors' estates. (*See* Litigation Administrator ARM Agreement § 2.1[2]; Plan Art. IV.L.)

### B.   The Motions

Over July 12 and July 13, 2024, the Litigation Administrator ARM filed each of the complaints (the "Complaints") which initiated the Adversary Proceedings.  Concurrently, they filed the Motions, seeking to seal certain exhibits annexed to the Complaints.  The Litigation Administrator contends that these exhibits contain confidential information, such as sensitive financial information including account numbers, routing numbers, cryptocurrency wallet addresses, and other personally identifiable information (collectively, the "Confidential Information").  (*See, e.g.*, Tower Motion ¶ 10.)

The Motions, including the information they seek to seal within exhibits to the corresponding Complaints, are substantially similar in form.  They are summarized in turn below.

### 1.   The Nickel Motion

The Complaint against Nickel (the "Nickel Complaint," Adv. Pro. 24-03986 ECF Doc. # 1) seeks to recover allegedly avoidable transfers made to Nickel via the Institutional Lending Program.[3]  (Nickel Complaint ¶¶ 2, 6.)

---

[2]       The Litigation Administrator ARM Agreement references an Exhibit B on which the ARM Claims are listed.  (*See* Litigation Administrator ARM Agreement §§ 2.1, 3.1, 7.1(b)(ii).)  However, no such Exhibit is annexed.

[3]       Celsius, through its institutional lending program (the "Institutional Lending Program"), lent cryptocurrency to institutional clients such as hedge funds and market-makers on both a secured and unsecured basis. (Nickel Complaint ¶ 1.)  On occasion, Celsius would enter into borrowing arrangements with these same clients, who were among the primary beneficiaries of Celsius's pre-petition transfers.  (*Id.*)

The Nickel Motion seeks to seal (1) a master loan agreement, effective as of March 3, 2022 by and between Nickel, as lender, and Celsius Network Limited ("CNL"), as borrower (the "Nickel MLA," Nickel Complaint Ex. B); and (2) a loan term sheet of even date, under which Celsius borrowed 20,000,000 USDT from Nickel (the "Nickel Term Sheet," Nickel Complaint Ex. C).  (Nickel Complaint ¶ 33; Nickel Motion ¶ 10.)

### 2.  The Nascent Motion

The Complaint against Nascent (the "Nascent Complaint," Adv. Pro. 24-03987 ECF Doc. # 1) seeks to recover allegedly avoidable transfers made to Nascent via the Institutional Lending Program.  (Nascent Complaint ¶¶ 2, 6.)

The Nascent Motion seeks to seal (1) a master loan agreement, dated as of August 26, 2021 (the "Nascent MLA," Nascent Complaint Ex. B) pursuant to which CNL would lend certain digital assets or fiat currency to Nascent as set forth in certain term sheets; and (2) those term sheets contemplated by the Nascent MLA (the "Nascent Term Sheets," Nascent Complaint Ex. C).  (Nascent Complaint ¶ 31; Nascent Motion ¶ 10.)

### 3.  The Point95 Global Motion

The Complaint against Point95 Global (the "Point95 Global Complaint," Adv. Pro. 24-03990 ECF Doc. # 1) seeks to recover allegedly avoidable transfers made to Point95 Global via the Institutional Lending Program.  (Point95 Global Complaint ¶¶ 2, 6.)

The Point95 Global Motion seeks to seal (1) a master loan agreement, dated as of May 19, 2021 (the "Point95 Global MLA," Point95 Global Complaint Ex. B) pursuant to which CNL would lend certain digital assets or fiat currency to Point95 Global as set forth in certain term sheets; and (2) those term sheets contemplated by the Point95 Global MLA (the "Point95 Global

Term Sheets," Point95 Global Complaint Ex. C).  (Point95 Complaint Motion ¶ 31; Point95

Motion ¶ 10.)

### 4.  The 168 Trading Motion

The Complaint against 168 Trading (the "168 Trading Complaint," Adv. Pro. 24-03991

ECF Doc. # 1) seeks to recover allegedly avoidable transfers made to 168 Trading via the

Institutional Lending Program.  (168 Trading Complaint ¶¶ 2, 6.)

The 168 Trading Motion seeks to seal (1) a master loan agreement, dated as of August

20, 2021 (the "168 Trading MLA," 168 Trading Complaint Ex. B) pursuant to which CNL would

lend certain digital assets or fiat currency to 168 Trading as set forth in certain term sheets; and

(2) those term sheets contemplated by the 168 Trading MLA (the "168 Trading Term Sheets,"

168 Trading Complaint Ex. C).  (168 Trading Complaint ¶ 31; 168 Trading Motion ¶ 10.)

### 5.  The Onchain Motion

The Complaint against Onchain (the "Onchain Complaint," Adv. Pro. 24-03993 ECF

Doc. # 1) seeks to recover allegedly avoidable transfers made to Onchain via the Institutional

Lending Program.  (Onchain Complaint ¶¶ 2, 6.)

The Onchain Motion seeks to seal (1) a digital asset lending agreement, dated as of

October 26, 2020 (the "Onchain DALA," Onchain Complaint Ex. B) pursuant to which CNL

would lend certain digital assets or fiat currency to Onchain as set forth in certain term sheets;

and (2) those term sheets contemplated by the Onchain DALA (the "Onchain Term Sheets,"

Onchain Complaint Ex. C).  (Onchain Complaint ¶ 31; Onchain Motion ¶ 10.)

6. <u>The B2C2 Motion</u>

The Complaint against B2C2 (the "B2C2 Complaint," Adv. Pro. 24-03995 ECF Doc. # 1)
seeks to recover allegedly avoidable transfers made to B2C2 via the Institutional Lending
Program. (B2C2 Complaint ¶¶ 2, 6.)

The B2C2 Motion seeks to seal (1) a digital asset lending agreement, dated as of June 2,
2020 (the "B2C2 DALA," B2C2 Complaint Ex. B) pursuant to which CNL would lend certain
digital assets or fiat currency to B2C2 as set forth in certain term sheets; and (2) those term
sheets contemplated by the B2C2 DALA (the "B2C2 Term Sheets," B2C2 Complaint Ex. C).
(B2C2 Complaint ¶ 31; B2C2 Motion ¶ 10.)

7. <u>The Matrix Motion</u>

The Complaint against Matrix (the "Matrix Complaint," Adv. Pro. 24-03996 ECF Doc. #
1) seeks to recover allegedly avoidable transfers made to Matrix via the Institutional Lending
Program. (Matrix Complaint ¶¶ 2, 6.)

The Matrix Motion seeks to seal (1) a master loan agreement, dated as of November 20,
2020 (the "Matrix MLA," Matrix Complaint Ex. B) pursuant to which CNL would lend certain
digital assets or fiat currency to Matrix as set forth in certain term sheets; and (2) those term
sheets contemplated by the Matrix MLA (the "Matrix Term Sheets," Matrix Complaint Ex. C).
(Matrix Complaint ¶ 31; Matrix Motion ¶ 10.)

8. <u>The Symbolic Motion</u>

The Complaint against Symbolic (the "Symbolic Complaint," Adv. Pro. 24-03997 ECF
Doc. # 1) seeks to recover allegedly avoidable transfers made to Symbolic via the Institutional
Lending Program. (Symbolic Complaint ¶¶ 2, 6.)

The Symbolic Motion seeks to seal (1) a master loan agreement, dated October 21, 2021,

(the "Symbolic MLA," Symbolic Complaint Ex. B) pursuant to which CNL would borrow certain

digital assets or fiat currency from Symbolic as set forth in certain term sheets; and (2) those term

sheets contemplated by the Symbolic MLA (the "Symbolic Term Sheets," Symbolic Complaint

Ex. C).  (Symbolic Complaint ¶ 29; Symbolic Motion ¶ 10.)

9.   The Blockchain Access Motion

The Complaint against Blockchain Access (the "Blockchain Access Complaint," Adv.

Pro. 24-03998 ECF Doc. # 1) seeks to recover allegedly avoidable transfers made to Blockchain

Access via the Institutional Lending Program.  (Blockchain Access Complaint ¶¶ 2, 6.)

The Blockchain Access Motion seeks to seal (1) a digital asset lending agreement, dated

as of July 9, 2019 (the "Blockchain Access DALA," Blockchain Access Complaint Ex. B)

pursuant to which Celsius would lend certain digital assets or fiat currency Blockchain Access as

set forth in certain term sheets; and (2) those term sheets contemplated by the Blockchain Access

DALA (the "Blockchain Access Term Sheets," Blockchain Access Complaint Ex. C).

(Blockchain Access Complaint ¶ 31; Blockchain Access Motion ¶ 10.)

10. The Tower Motion

The Complaint against Tower (the "Tower Complaint," Adv. Pro. 24-03999 ECF Doc. #

1) seeks to recover allegedly avoidable transfers made to Tower via the Institutional Lending

Program.  (Tower Complaint ¶¶ 2, 6.)

The Tower Motion seeks to seal (1) a master loan agreement, dated December 15, 2021,

(the "Tower MLA," Tower Complaint Ex. B) pursuant to which CNL would borrow certain

digital assets or fiat currency from Tower as set forth in certain term sheets; and (2) those term

sheets contemplated by the Tower MLA (the "Tower Term Sheets," Tower Complaint Ex. C). (Tower Complaint ¶ 31; Tower Motion ¶ 10.)

## II.    LEGAL STANDARD

### A.  Presumption and Public Policy in Favor of Public Access to Court Records

There is a strong presumption and public policy in favor of public access to court records. *See, e.g.*, *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597–98 (1978); *Neal v. The Kansas City Star (In re Neal)*, 461 F.3d 1048, 1053 (8th Cir. 2006); *In re Food Mgmt. Grp.*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).  The right of public access is "rooted in the public's First Amendment right to know about the administration of justice."  *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994).  *See also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005) (stating that public access "helps safeguard the integrity, quality, and respect in our judicial system, and permits the public to keep a watchful eye on the workings of public agencies") (citations omitted).  "The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved."  *Food Mgmt. Grp.*, 359 B.R. at 553.  The presumption of open access to court records is codified in section 107 of the Bankruptcy Code.  *See* 11 U.S.C. § 107(a).

Nevertheless, Congress implemented statutory exemptions to prevent disclosure of certain information in a bankruptcy case.  *See Orion Pictures*, 21 F.3d at 27.  However, "[c]ourts have zealously upheld the public's right to access and narrowly construed the exceptions."  *Togut v. Deutsche Bank AG, Cayman Islands Branch (In re Anthracite Cap., Inc.)*, 492 B.R. 162, 176 (Bankr. S.D.N.Y. 2013).  Information that "might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents."  *Id.* (citing *In re FiberMark, Inc.*, 330

B.R. 480, 506 (Bankr. D. Vt. 2005)).  Ultimately, the "decision whether to seal bankruptcy court

records lies within the discretion of the bankruptcy court." *FiberMark*, 330 B.R. at 506.

### B.  The Statutory Exemptions

In limited circumstances, section 107(b) of the Bankruptcy Code requires a bankruptcy

court to seal documents that would normally be available to the public.  Section 107(b) states, in

pertinent part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy
> court's own motion, the bankruptcy court may—
>
> > (1) Protect an entity with respect to a trade secret or confidential research,
> > development, or *commercial information*.

11 U.S.C. § 107(b) (emphasis added).

Rule 9018 of the Federal Rules of Bankruptcy Procedure establishes the procedures to

invoke section 107(b).  In relevant part, Rule 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any
> order which justice requires (1) to protect the estate or any entity in respect of a
> trade secret or other confidential research, development, or commercial information
> . . . contained in any paper filed in a case under the Code.

FED. R. BANKR. P. 9018.

The moving party bears the burden of showing that the information is confidential under

section 107(b).  *See Food Mgmt. Grp.*, 359 B.R. at 561.  The exception to the general right of

access in section 107(b) is narrow.  *See Orion Pictures*, 21 F.3d at 27.  However, for bankruptcy

cases, "congress has established a special rule for trade secrets and confidential research,

development, and commercial information" and so once a court determines that a party in

interest is seeking protection of information that falls within one of these categories, "the court is

*required* to protect a requesting party and has no discretion to deny the application."  *Id.*

Additionally, section 107(b) of the Bankruptcy Code does not require a party seeking its protections to demonstrate "good cause." *Id.* at 28.

"Commercial information," as used in section 107(b)(1) of the Bankruptcy Code, is defined as "information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *See Orion Pictures*, 21 F.3d at 27 (quoting *Ad Hoc Protective Comm. for 10 1/2 % Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)). Commercial information need not rise to the level of a trade secret to qualify for protection under section 107(b), but the information must be "so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors." *In re Barney's, Inc.*, 201 B.R. 703, 708–09 (Bankr. S.D.N.Y. 1996) (citing *Orion Pictures*, 21 F.3d at 26).

In cases where protection is required, the form of protection that must be granted is not commanded by the statute. The Court has discretion when deciding how to protect commercial information. *See Gitto*, 422 F.3d at 9 ("It is true that § 107(b)(2) speaks of protection in general terms rather than of wholesale sealing, and that courts must therefore exercise some discretion in determining what form of protection to grant."). Redacting documents to remove only protectable information is preferable to wholesale sealing. *In re Oldco M Corp.*, 466 B.R. 234, 237 n.2 (Bankr. S.D.N.Y. 2012). "The policy favoring public access supports making public as much information as possible while still preserving confidentiality of protectable information." *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (citing *Nixon v. Warner*, 435 U.S. at 597–98).

### III.   DISCUSSION

While many of the term sheets (the "Term Sheets") that the Litigation Administrator ARM seeks to seal contain Confidential Information, the *bodies* of the agreements themselves—the MLAs and DALAs—do not contain any account numbers, routing numbers, or cryptocurrency wallet addresses.  They do not even contain any economic terms of the loans, except for the late fees.  However, a handful of agreements annex *form term sheets* that do include some Confidential Information, which should be selectively redacted.  Further, the MLAs and DALAs (in the body and/or in an annex) contain the company email addresses of the designated agents for the counterparties, which is personally identifiable information ("PII").  Accordingly, with respect to the MLAs and DALAs, the Motions are **GRANTED IN PART**, *only* to the extent that they contain Confidential Information (bank information, wallet addresses, and the emails of designated agents), which shall be redacted.

The terms sheets, however, *do* contain Confidential Information such as account numbers, routing numbers, and cryptocurrency wallet addresses.  They also contain the economic terms of each loan, including borrow fees, collateral and margin call levels, and the amount borrowed.  These latter items do not fall within the Motions' definition of "Confidential Information."  Accordingly, with respect to the Term Sheets, the Motions are **GRANTED IN PART** *only* of to the extent that they contain Confidential Information, which shall be redacted.

### A.  The MLAs and DALAs

The MLAs and DALAs, while they vary slightly in certain respects, all have substantially the same structure: they outline the overall loan agreement, including how fees will be calculated, the obligation to provide collateral, and provisions in the event of a "hard fork" on the blockchain.  They contain representations and warranties and standard boilerplate provisions.

14

Some include a confidentiality provision that covers "all information obtained from the other Party in connection with this Agreement and the transactions contemplated hereby." (*See, e.g.*, Tower MLA § 15.1.)

The Motions, however, do not argue that the mechanisms of the MLAs and DALAs are Confidential Information. Rather, they argue that the MLAs and DALAs *contain* Confidential Information, and they seek to file them under seal "to preserve the confidentiality of the Confidential Information." (*See, e.g.*, Onchain Motion ¶ 19.) However, certain Confidential Information (bank information and wallet addresses) is contained in *exhibits or annexes* of the Nascent MLA, Point95 Global MLA, 168 Trading MLA, Onchain DALA, B2C2 DALA, Matrix MLA, and Tower MLA. Further, the email addresses of the designated agents (which appear both in the bodies of the agreements and various exhibits or annexes) may be sealed as protected PII. The Court concludes that the late fees included in the agreements are not entitled to protection and may not be redacted or sealed.

The MLAs and DALAs, along with where Confidential Information (including PII) are found, are summarized as follows.

| Agreement | Structure | Confidential Information |
|---|---|---|
| 1. Nickel MLA | § I: Definitions<br>§ II: General Loan Terns (procedure, types of loans, termination of loans)<br>§ III: Loan Fees and Transaction Fees<br>§ IV: Collateral Requirements (mechanisms, margin calls, excess collateral, return of collateral)<br>§ V: Hard Fork (procedures if one occurs)<br>§ VI: Representations and Warranties<br>§ VII: Default<br>§ VIII: Remedies<br>§ IX: Rights and Remedies Cumulative<br>§ X: Survival of Rights and Remedies<br>§ XI: Collection Costs<br>§ XII: Governing Law; Dispute Resolution<br>§ XIII: Confidentiality | **PII:** Email in Exhibit A and DocuSign certificate of completion |

|  | § XIV: Notices<br>§§ XV–XXI Boilerplate (Modifications, Entire Agreement, Successors and Assigns, Severability, Counterparts, Relationship of Parties, No Waiver)<br>§ XXII: Indemnification<br>§ XXIII: Term and Termination<br>§ XXIV: Miscellaneous<br><br>Exhibit A: Authorized Agents<br>Exhibit B: Loan Term Sheet (no wallet/financial address filled in) |  |
| --- | --- | --- |
| 2. Nascent MLA | § 1: Definitions<br>§ 2: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 3: The Fees (calculation thereof, late fees and taxes)<br>§ 4: The Collateral (mechanisms, margin calls, excess collateral, return of collateral)<br>§ 5: Hard Forks, Airdrops (procedures if one occurs)<br>§ 6: Representations and Warranties<br>§ 7: Onboarding, KYC and AML Measures<br>§ 8: Event of Default<br>§ 9: Remedies<br>§ 10: Market Disruption Events<br>§ 11: Government Restrictions<br>§ 12: Termination<br>§ 13: Indemnification<br>§ 14: Notices<br>§ 15: Confidentiality<br>§ 16: Miscellaneous (boilerplate provisions – Interpretation, Assignment, Severability, etc).<br>§ 17: Submission to Arbitration; Waiver of Court and Jury Trial<br><br>Exhibit A: Authorized Agents<br>Annex B: Loan Term Sheet<br>Annex C: Collateral Adjustments<br>Annex D: Default Liquidity Exchanges | **PII**: Emails in § 14 and Exhibit A<br><br>**Confidential Information:** Bank account details and crypto wallet addresses on Annex B |
| 3. Point95 Global MLA | § 1: Definitions<br>§ 2: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 3: The Fees (calculation thereof, late fees and taxes)<br>§ 4: The Collateral (mechanisms, margin calls, excess collateral, return of collateral) | **PII**: Emails in § 14 and Exhibit A<br><br>**Confidential Information:** Bank account details and crypto wallet addresses on Annex B |

| | | |
|---|---|---|
| | § 5: Hard Forks, Airdrops (procedures if one occurs)<br>§ 6: Representations and Warranties<br>§ 7: Onboarding, KYC and AML Measures<br>§ 8: Event of Default<br>§ 9: Remedies<br>§ 10: Market Disruption Events<br>§ 11: Government Restrictions<br>§ 12: Termination<br>§ 13: Indemnification<br>§ 14: Notices<br>§ 15: Confidentiality<br>§ 16: Miscellaneous (boilerplate provisions – Interpretation, Assignment, Severability, etc).<br>§ 17: Submission to Arbitration; Waiver of Court and Jury Trial<br><br>Exhibit A: Authorized Agents<br>Annex B: Loan Term Sheet<br>Annex C: Collateral Adjustments<br>Annex D: Default Liquidity Exchanges | |
| 4. 168 Trading MLA | § 1: Definitions<br>§ 2: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 3: The Fees (calculation thereof, late fees and taxes)<br>§ 4: The Collateral (mechanisms, margin calls, excess collateral, return of collateral)<br>§ 5: Hard Forks, Airdrops (procedures if one occurs)<br>§ 6: Representations and Warranties<br>§ 7: Onboarding, KYC and AML Measures<br>§ 8: Event of Default<br>§ 9: Remedies<br>§ 10: Market Disruption Events<br>§ 11: Government Restrictions<br>§ 12: Termination<br>§ 13: Indemnification<br>§ 14: Notices<br>§ 15: Confidentiality<br>§ 16: Miscellaneous (boilerplate provisions – Interpretation, Assignment, Severability, etc).<br>§ 17: Submission to Arbitration; Waiver of Court and Jury Trial<br><br>Exhibit A: Authorized Agents | **PII**: Emails in § 14 and Exhibit A<br><br>**Confidential Information:** Bank account details and crypto wallet addresses on Annex B |

| | Annex B: Loan Term Sheet<br>Annex C: Collateral Adjustments<br>Annex D: Default Liquidity Exchanges | |
|---|---|---|
| 5. Onchain DALA | § 1: Interpretation<br>§ 2: Definitions<br>§ 3: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 4: Borrow Fees and Transaction Fees (calculation thereof, late fees and taxes)<br>§ 5: Collateral Requirements (mechanisms, margin calls, excess collateral, return of collateral)<br>§ 6: Hard Forks (procedures if one occurs)<br>§ 7: Representations and Warranties<br>§ 8: Events of Default<br>§ 9: Remedies<br>§ 10: Rights and Remedies Cumulative<br>§ 11: Indemnity<br>§ 12: Notices<br>§§ 13–20: Boilerplate (Modifications, Termination, Transfer, Entire Agreement, Severability, Counterparts, Relationship of Parties, Rights of Third Parties,<br>§ 21: Submission to Arbitration; Waiver of Court and Jury Trial<br><br>Annex A: Authorized Agents (not filled out)<br>Annex B: Loan Term Sheet<br>Annex C: Collateral Adjustments | **PII**: Email in § 12<br><br>**Confidential Information:** Bank account details and crypto wallet addresses on Annex B |
| 6. B2C2 DALA | § 1: Interpretation<br>§ 2: Definitions<br>§ 3: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 4: Borrow Fees and Transaction Fees (calculation thereof, late fees and taxes)<br>§ 5: Collateral Requirements (mechanisms, margin calls, excess collateral, return of collateral)<br>§ 6: Hard Forks (procedures if one occurs)<br>§ 7: Representations and Warranties<br>§ 8: Event of Default<br>§ 9: Remedies<br>§ 10: Rights and Remedies Cumulative<br>§ 11: Indemnity<br>§ 12: Notices<br>§§ 13–20: Boilerplate (Modifications, Termination, Transfer, Entire Agreement, Severability, | **PII**: Emails in Annex A<br><br>**Confidential Information:** Bank account details and crypto wallet addresses on Annex B |

| | | |
|---|---|---|
| | Counterparts, Relationship of Parties, Rights of Third Parties)<br>§ 21: Submission to Arbitration; Waiver of Court and Jury Trial<br><br>Annex A: Authorized Agents<br>Annex B: Loan Term Sheet<br>Annex C: Collateral Adjustments | |
| 7. Matrix MLA | § I: Definitions<br>§ II: General Loan Terms (Loan procedure, types of loans, termination of loans)<br>§ III: Loan Fees and Transaction Fees<br>§ IV: Collateral Requirements (mechanisms, margin calls, excess collateral, return of collateral)<br>§ V: Hard Fork (procedures if one occurs)<br>§ VI: Representations, Warranties and Covenants<br>§ VII: Default<br>§ VIII: Remedies<br>§ IX: Survival of Rights and Remedies<br>§ X: Governing Law; Dispute Resolution<br>§ XI: Confidentiality<br>§ XII: Notices<br>§§ XIII–XX Boilerplate (Modifications, Single/Entire Agreement, Successors and Assigns, Severability, Counterparts, Relationship of Parties, No Waiver)<br>§ XXI: Indemnification<br>§ XXIII: Term and Termination<br><br>Exhibit A: Authorized Agents<br>Exhibit B: Loan Term Sheet | **PII**: Emails § XII and Exhibit A<br><br>**Confidential Information:** Bank account details and crypto wallet addresses on Exhibit B |
| 8. Symbolic MLA | § I: Definitions<br>§ II: General Operation (Loan procedure, types of loans, termination of loans)<br>§ III: Loan Fees and Transaction Fees<br>§ IV: Collateral Requirements (mechanisms, margin calls, excess collateral, return of collateral)<br>§ V: Hard Forks (procedures if one occurs)<br>§ VI: Representations and Warranties<br>§ VII: Default<br>§ VIII: Remedies<br>§ IX: Rights and Remedies Cumulative<br>§ X: Survival of Rights and Remedies<br>§ XI: Collection Costs<br>§ XII: Governing Law; Dispute Resolution<br>§ XIII: Confidentiality | **PII:** Email in Exhibit A and DocuSign certificate of completion |

|  | § XIV: Notices<br>§§ XV–XXI Boilerplate (Modifications, Entire Agreement, Successors and Assigns, Severability, Counterparts, Relationship of Parties, No Waiver)<br>§ XXII: Indemnification<br>§ XXIII: Term and Termination<br>§ XXIV: Miscellaneous<br><br>Exhibit A: Authorized Agents<br>Exhibit B: Loan Term Sheet (not filled in)<br>Exhibit C: Default Liquidity Exchanges<br>Exhibit D: Collateral Adjustments |  |
|---|---|---|
| 9. Blockchain Access DALA | § 1: Interpretation<br>§ 2: Definitions<br>§ 3: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 4: Borrow Fees and Transaction Fees (calculation thereof, late fees and taxes)<br>§ 5: Collateral Requirements (mechanisms, margin calls, excess collateral, return of collateral)<br>§ 6: Hard Forks (procedures if one occurs)<br>§ 7: Representations and Warranties<br>§ 8: Events of Default<br>§ 9: Remedies<br>§ 10: Rights and Remedies Cumulative<br>§ 11: Indemnity<br>§ 12: Notices<br>§§ 13–21: Boilerplate (Modifications, Termination, Transfer, Entire Agreement, Severability, Counterparts, Relationship of Parties, Rights of Third Parties, Governing Law; Dispute Resolution).<br><br>Annex A: Authorized Agents<br>Annex B: Loan Term Sheet (blank page) | **PII**: Emails § 12 and Annex A |
| 10. Tower MLA | § 1: Definitions<br>§ 2: General Operation (Loan procedure, types of loans, termination of loans)<br>§ 3: The Fees (calculation thereof, late fees and taxes)<br>§ 4: The Collateral (mechanisms, margin calls, excess collateral, return of collateral)<br>§ 5: Hard Forks, Airdrops (procedures if one occurs)<br>§ 6: Representations and Warranties<br>§ 7: Onboarding, KYC and AML Measures<br>§ 8: Events of Default | **PII**: Emails § 14 and Exhibit A<br><br>**Confidential Information:**<br>Bank account details and crypto wallet addresses on Annex B |

| | § 9: Remedies<br>§ 10: Market Disruption Events<br>§ 11: Government Restrictions<br>§ 12: Termination<br>§ 13: Indemnification<br>§ 14: Notices<br>§ 15: Confidentiality<br>§ 16: Miscellaneous (boilerplate provisions –<br>Interpretation, Assignment, Severability, etc).<br>§ 17: Submission to Arbitration and Waiver of<br>Court and Jury Trial<br><br>Exhibit A: Authorized Agents<br>Annex B: Loan Term Sheet<br>Annex C: Collateral Adjustments<br>Annex D: Default Liquidity Exchanges | |
|---|---|---|

The Court has discretion in deciding how to protect confidential information. *Gitto*, 422 F.3d at 9. In this case, certain snippets of the sealed agreements contain Confidential Information. However, as this Court has recognized, "rather than wholesale sealing of documents containing some confidential information, redacting the document to remove only confidential information is the preferred form of protection." *Oldco M Corp.*, 466 B.R. at 237 n.2.

Accordingly, with respect to the MLAs and DALAs, the Motions are **GRANTED IN PART**. The Litigation Administrator ARM shall re-file the exhibits containing the MLAs and DALAs with redactions *only* of the Confidential Information found in certain exhibits related to bank information and crypto wallets; the email addresses of the authorized agents may also be redacted.

### B.  The Term Sheets

The Term Sheets contain the specific economic terms of each transaction: the lender; the borrower; the type and amount of digital asset; the loan type and term; the borrow fee and form

to pay it; the collateral asset type, spot price, amount, and level; the spot rate change; the margin

call level and margin refund level; and the relevant wallet addresses and bank wire information.

"Confidential Information" is defined in the Motions as "sensitive financial information,

including account numbers, routing numbers, cryptocurrency wallet addresses, and other

personally identifiable information." (*See, e.g.*, Tower Motion ¶ 10.)  This does not include

items such as fees, margin call or collateral levels, and the like.

The Post-Effective Date Debtors are not engaging in any more institutional loaning; thus,

disclosure of these terms would not create "an unfair advantage to competitors by providing

them information as to the *commercial operations of the debtor*."  *Orion Pictures Corp.*, 21 F.3d

at 2 (emphasis added).  Although the Motions were filed on behalf of the Post-Effective Date

Debtors, if the financial information in the Term Sheets is "so critical to the operations of the

*entity* seeking the protective order that its disclosure will unfairly benefit the *entity's*

competitors," the Court could be justified in sealing the Term Sheets.  *In re Celsius Network

LLC*, No. 22-10964 (MG) (Bankr. S.D.N.Y. Sept. 28, 2022) (emphasis added) (citation and

quotation marks omitted).  However, the counterparties did not seek to keep these economic

terms sealed to protect their own ongoing operations (to the extent they exist).  Accordingly, the

Term Sheets shall be re-filed with only the bank information and wallet addresses redacted.

[*Remainer of page intentionally left bank.*]

## IV.    CONCLUSION

The Motions to seal are **GRANTED IN PART**.  The Litigation Administrator ARM shall re-file the exhibits containing the Term Sheets, MLAs, and DALAs with *only* the bank information, wallet information, and the emails of designated agents redacted.


**IT IS SO ORDERED.**


Dated:    August 2, 2024
          New York, New York

                                    *Martin Glenn*
                                 _____
                                    MARTIN GLENN
                           Chief United States Bankruptcy Judge